## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RANDY LUNDY,<br><br>     Plaintiff,<br>v.<br>HL MOTOR GROUP, INC., HIGHLIGHT MOTOR FREIGHT USA, INC., OLD REPUBLIC INSURANCE COMPANY, AND OGNJEN MILANOVIC,<br><br>     Defendants. | Case No.: CIV-22-699-F |
| FARMERS MUTUAL FIRE INSURANCE COMPANY OF OKARCHE,<br><br>     Plaintiff,<br>v.<br>HL MOTOR GROUP, INC. and OGNJEN MILANOVIC,<br><br>     Defendants. | Case No.:  CIV-22-752-F |

## PLAINTIFF RANDY LUNDY'S
## MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT

Plaintiff Randy Lundy ("Lundy"), pursuant to Fed.R.Civ.P. 56 and LCvR 56.1, respectfully moves this Court for an Order granting Lundy summary judgment against all Defendants. Lundy adopts and incorporates herein the Motion for Summary Judgment (Doc. 23) filed herein by Plaintiff Farmers Mutual. In the interests of efficiency, Lundy efforts here to succinctly reiterate the evidence, arguments, and authority by which all Plaintiffs are entitled to summary judgment against Defendants.

### INTRODUCTION

On August 8, 2020, Defendant driver, while in the course and scope of his employment for Defendant HL Motor Group, lost control of his 55,000 pound 18-wheeler,

1

ran off the turnpike, and crashed the truck into homes owned by Lundy and Carr (the latter insured by Farmers Mutual). Fortunately, no one was killed or seriously injured. Lundy sustained property damage of $157,128.21 and suffered loss of rental income of $28,850.00.[1] See Joint Status Report (Doc. 16).

Defendants' sole defense to this negligence action is that Defendant Milanovic did not maintain proper hydration on a hot day and allegedly passed out at the wheel of his truck at highway speed. Repeating, that is the *defense*! The driver claims he did not fall asleep, but he also has no recollection of what occurred prior to the collision, so his self-serving denial that he fell asleep is of no evidentiary value. But assuming Milanovic did pass out from dehydration while driving, as Defendants' expert contends, both Milanovic and Alexander Saitov, Defendant HL's corporate representative and V.P. of Safety and Compliance, testified, logically, that dehydration is foreseeable and "100 percent avoidable." Moreover, Saitov, the corporate rep, testified, again logically, that it is simply not possible for dehydration to cause Milanovic to lose consciousness without earlier warning signs or symptoms.  Thus, even HL is not buying the defense it asserts.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1. On August 8, 2020, Milanovic, while driving a semi tractor trailer, owned by the Defendant, HL on the Kilpatrick Turnpike in Canadian County, Oklahoma, drove the

---

[1] During the deposition of Defendants' corporate representative, Defendants stipulated on the record that no challenge is made to the amount of Plaintiffs' damages. See stipulation, **EXHIBIT 4, SAITOV DEP., PG. 19, LN. 18-25.**

truck off the turnpike and collided with houses owned by Lundy and Carr. **EXHIBIT 1, TRAFFIC COLLISION REPORT.**

2.     While the Traffic Collision Report states Milanovic had been driving for "at least" nine hours, **EXHIBIT 1, PG. 6 OF 6,** the driver's log and testimony establish a longer workday. Milanovic's driver's log reflects the truck had been driven 10 hours, 18 minutes, and 45 seconds prior to the collision.[2] He had been looking for a place for his mandatory overnight break before the collision. He had "12 hours of hard driving before the collision occurred." **EXHIBIT 2, MILANOVIC DEP., PG. 99: 14 – 101: 22.**

3.     Milanovic was acting in the course of employment with HL at the time the accident occurred. See Defendants Answer (Doc. 7), ¶ 1.

4.     The only medical condition Defendants point to for Milanovic purportedly losing consciousness while driving is dehydration, a "heat-related acute illness." **EXHIBIT 3, FLETCHER AFFIDAVIT, ¶ 22).**

5.     Milanovic was aware that he was driving from Canada down to Oklahoma in the summer heat, that the "older equipment, it - - the air conditioning is never as good as it should be," and that he noticed the heat obviously. **EXHIBIT 2, MILANOVIC DEP., PG. 111: 9-23.**

---

[2] Defendants' truck is equipped with a tracking device that detects, among other things, when the truck is in motion. The log, **EXHIBIT 5,** establishes the truck was in motion 10 hours, 18 minutes, and 45 seconds on the date of the accident. Milanovic started his trip at 5:00 a.m. in Fancy Creek, Illinois, and crashed into the homes in Yukon, Oklahoma, at 5:40 p.m.

6.      Milanovic acknowledges that notwithstanding the heat and problems with the truck air conditioning equipment, it is his responsibility as a professional truck driver to stay hydrated while driving. **EXHIBIT 2, PG. 111: 24 – PG. 112: 25.** He should pull over. He knew that continuing to drive under such circumstances results in accidents like this one. *Id.*

7.      HL admits that its drivers are responsible for ensuring they are hydrated at all times to avoid any negative health consequences of dehydration that might impair the ability to drive. **EXHIBIT 4, SAITOV DEP., PG. 51:13-17**. *See also* **PG. 53: 22 – Pg. 54: 4** (driving while dehydrated due to absence of fluids and/or cab temperature is preventable).

8.      HL admits that dehydration is a self-induced condition that is entirely and "absolutely preventable." **EXHIBIT 4, PG. 52: 24 – Pg. 53: 13.** *See also* **PG. 49: 18-25** (Extreme dehydration to the extent of loss of consciousness is preventable by the truck driver); and **PG. 50: 22-25** ("Dehydration is 100 percent avoidable.")

9.      HL admits that driving on a hot summer day through Missouri and Oklahoma in 90+ degree temperatures with an improperly functioning air conditioner is preventable. **EXHIBIT 4, PG. 53: 14 – 24.** HL is responsible for ensuring the AC units in its trucks are functioning properly. **EXHIBIT 4, PG. 61: 5-8.** It is the driver's job to report a poorly performing air-conditioning unit to HL. **EXHIBIT 4, PG. 62: 13 -19.**

10.      Contrary to its expert, HL denies its driver succumbed to dehydration. It is "not possible" that Milanovic had no symptoms of dehydration until he lost consciousness. Milanovic took a break three hours before the collision and, therefore, should have been properly hydrated. **EXHIBIT 4, PG. 55: 25 - PG. 59: 11.**

4

11.     Milanovic admits he is familiar with the signs of fatigue and dehydration, and he is responsible for remedying those conditions. **EXHIBIT 2, PG. 116: 13-19, PG. 114: 14-20, AND PG. 112: 14-25.**

12.     "It was pretty hot." Milanovic admits he is familiar with the effects of the heat on him when traveling into the south from his home in Canada. "[F]rom Canada, you – you always notice a difference obviously. And, you know, older equipment, it – the air conditioning is never as good as it should be, so, you know, you notice the heat obviously." **EXHIBIT 2, PG. 110: 9 – 112: 25.**  In light of his awareness of rising temperatures as he travelled south from Canada and that he experienced issues with his air-conditioning equipment, he knew to stay properly hydrated and that it was his responsibility to do so. *Id*.

13.     Milanovic is unable to attest to the presence or absence of dehydration symptoms prior to the collision. **EXHIBIT 2, PG. 115: 2 – PG. 116:19.**

## SUMMARY JUDGMENT STANDARD

Summary judgment is warranted where "there is no genuine dispute as to any material fact and . . . the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party opposing a motion for summary judgment must offer evidence of specific facts, in admissible form, sufficient to raise "a genuine issue of material fact." *Anderson v. Liberty Lobby*, 477 U.S. 242 (1986). Conclusory allegations or denials do not suffice. *Id.* at 248. "Unsubstantiated

allegations carry no probative weight in summary judgment proceedings." *Cardoso v. Calbone*, 490 F.3d 1194, 1197 (10th Cir. 2007).

## <u>ARGUMENT AND AUTHORITIES</u>

Negligence requires three elements must be established: (1) a duty owed by the defendant to protect the plaintiff from injury; (2) a failure to perform that duty; and (3) injuries to the plaintiff which are proximately caused by the defendant's failure to exercise the duty of care. *MeGee v. El Patio, LLC*, 2023 OK 14, ¶ 6, 524 P.3d 1283, 1285*, citing Smith v. City of Stillwater*, 2014 OK 42, ¶ 22, 328 P.3d 1192, 1200.

A driver owes a duty of care to those who may suffer injury or harm from his negligence. "Concerning duty of care, a driver of a motor vehicle must, at all times, use that degree of care which is reasonable and prudent under the circumstances." *Dirickson v. Mings*, 1996 OK 2, 910 P.2d 1015, 1018; *CTC, Inc. v. Schneider Nat'l Inc.*, CIV-20-1235-F, 2021 WL 5815833, at *2 (W.D. Okla. Dec. 7, 2021) (quoting same). "Therefore, a failure to exercise that degree of care which results in injury to another is actionable negligence." *Id.*  It is readily apparent that, in the absence of a legally sufficient excuse, losing control of an 18-wheeler and running off the highway and crashing into homes constitutes a breach of the driver's duty of care.

Based on a hired expert's report,[3] Defendants assert Milanovic's conduct should be excused because he suffered from the Oklahoma heat while driving a truck, became

---

[3] The expert's opinion must be taken with a heavy dose of salt given that Defendants asserted Milanovic "lost consciousness as the result of a sudden medical emergency" as early as August 26, 2022. See Defendants' Answer (Doc. 7, first Affirmative Defense). This was before Defendants acquired Milanovic's medical records (see **EXHIBIT 6,**

dehydrated, and passed out at the wheel. Keep in mind that the only non-opinion evidence that the driver passed out from dehydration, as opposed to falling asleep, are some slightly elevated lab results at the hospital. But assuming dehydration resulted in Milanovic losing consciousness while driving, Defendants readily admit the obvious - such condition is "100 percent avoidable," "absolutely preventable," and "absolutely not acceptable" conduct by the driver. Defendants seem to misunderstand the defense upon which they rely.

> Unavoidable accident by reason of sudden incapacitating illness or unconsciousness, if not foreseeable, is a defense to negligence. In order for defendant to be relieved of liability for negligence based on this affirmative defense, the defendant must prove the sudden unconsciousness that caused the accident and that the attack was not foreseeable. *Parker v. Washington,* 421 P.2d 861, 866 (Okla.1966). Thus, the burden of proof is on the defendant to introduce affirmative proof of every element of his affirmative defense of unavoidable accident.

*Bowers v. Wimberly*, 1997 OK 24, 933 P.2d 312, 314. As *Bowers* makes clear, to avail itself of the "unavoidable accident" defense, the accident must be both unavoidable and unforeseeable. Here, Defendants do not contend Milanovic had a sudden and unexpected stroke, heart attack, seizure, aneurysm, or other similar unavoidable or unforeseeable medical condition. Defendants present no post-accident medical diagnosis definitively and objectively pointing to a specific medical event that resulted in sudden loss of consciousness. Defendants point to no event-causing diagnosis by the emergency room

---

NOVEMBER 22, 2022, EMAIL FROM FRANZ ("We do not have any medical records for our client…") and more than 5 months before the expert was even hired. (See Doc. 23-1, pg. 3, expert retained January 31, 2023). Thus, it appears Defendants asserted the defense before it had any evidence then found an expert willing to support the defense with later acquired records.

physician. Indeed, Defendants present no evidence of a diagnosis (one explaining the cause for losing control of the truck) by any physician that ever saw or treated him after the collision. Rather, after first asserting the "sudden medical emergency" defense in its Answer, sans supporting medical records, Defendants hired an expert who examined lab findings contained in Milanovic's ER records and who opines the lab results are consistent with dehydration. Defendants present no evidence of an underlying medical condition, whether known or unknown to Milanovic, that would cause, contribute to, or compound the effects of his alleged dehydration episode while driving. In other words, *according to Defendants' expert*, the driver lost consciousness solely because he was insufficiently hydrated on a hot summer day.

While obvious, "Dehydration occurs when you use or lose more fluid than you take in, and your body doesn't have enough water and other fluids to carry out its normal functions."[4] Symptoms for adults experiencing dehydration include extreme thirst, less frequent and dark-colored urine, fatigue, dizziness, and confusion.[5] Milanovic knew he was traveling into the south from his home in Canada. "You notice the heat obviously." He also observed his truck AC unit was not working "as good as it should be." Given those factors, he knew it was important to stay hydrated. He admits that dehydration, as well as the consequences of a driver operating a 55,000-pound truck while dehydrated, were

---

[4] Mayo Clinic, *Dehydration*, WWW.MAYOCLINIC.ORG,
https://www.mayoclinic.org/diseases-conditions/dehydration/symptoms-causes/syc-20354086
(last visited Jun. 1, 2023).

[5] *Id.*

foreseeable. Defendant HL admits dehydration is an entirely self-induced and avoidable condition and its drivers are responsible for staying hydrated. In short, the alleged medical condition – presented nearly three years after the fact by a hired expert – is both foreseeable and "absolutely," "100 percent" avoidable.

Defendants contend that because Milanovic himself asserts (1) he probably did not fall asleep[6] and (2) he doesn't remember the accident, he must have lost consciousness while driving. Defendants' expert says the ER lab results point to dehydration as the cause for the alleged loss of consciousness. At best, the specific lab results relied upon by Defendants' expert are potentially consistent with Milanovic being slightly dehydrated, again, a self-induced and easily avoidable condition. But assembling all the evidence in support of the "sudden medical emergency" defense, there is an expert who says Milanovic succumbed to heat-induced dehydration while driving resulting in a loss of consciousness, while Milanovic has no recollection of the presence or absence of dehydration symptoms or why he lost control of the truck, and his employer, through its corporate representative and V.P. of Safety and Compliance, has testified that in his experience in the trucking industry it is simply "not possible" that Milanovic would be completely asymptomatic yet suddenly lose consciousness from dehydration. In other words, HL admits that it defies all logic that the very first manifestation of alleged dehydration is a loss of consciousness.

---

[6] The sole basis for Milanovic's assertion that he did not fall asleep while driving is that he opines the rumble strips would have likely wakened him. **Exhibit 2, pg. 67: 6-14.** He purports to have no memory of the accident or when he lost consciousness, if that occurred. **Exhibit 2, pg. 66: 1-12.** The last thing Milanovic remembers before leaving the roadway is looking for road signs to select where he would take his required break. **Exhibit 2, pg. 94: 1-13, pg. 98: 17-21.**

Moreover, the V.P. of Safety and Compliance points to the fact that Milanovic took a 45-minute break three hours before the collision and, thus, has *no excuse* for being dehydrated if that was the case.

Importantly, Defendants have the burden of proof on its unavoidable accident defense. *Bowers, supra.,* 933 P.2d at 314. Defendants must present evidence of a medical condition, one beyond Defendants' ability to avoid or foresee. *Id*. The accident must have been unavoidable under the circumstances. Here, it is equally, if not more likely, that Milanovic fell asleep[7] after driving nearly 12 hours on a hot summer day than he suddenly, without any earlier signs or symptoms, lost consciousness from dehydration. But either way, Defendants lose. Both conditions, sleepiness/fatigue and dehydration, are foreseeable and absolutely preventable. There is no material evidentiary dispute. Even if Milanovic suddenly passed out from dehydration without a single pre-loss symptom, no reasonable juror could conclude under these circumstances – 12 hours work in the cab of a truck on a hot August day with insufficient air conditioning – that a driver (and his employer) should escape liability for a crash resulting from inadequate fluid intake or failure to pull over earlier.

---

[7] The investigation by the Oklahoma Highway Patrol pointed to "sleepy driver" as the cause of the collision. **EXHIBIT 1, PG. 6 OF 6.**

**<u>CONCLUSION</u>**

The homes owned by Lundy and Carr were severely damaged when the driver of Defendants' truck lost control, left the turnpike at highway speeds and crashed into the homes. Defendants were responsible for the safe operation of the truck and are liable for damages resulting from the driver's negligence. The sole defense asserted is that the driver was unavoidably dehydrated. To prevail on the unavoidable accident defense, dehydration must be unforeseeable and beyond Defendants' control. But the driver was fully aware of the conditions – a hard 12-hour work day, driving on the highway from up north to the south on a hot August day, and insufficient air conditioning. Dehydration, if that occurred, is a self-induced condition. In this case, *if* dehydration occurred, it was caused by the loss of bodily fluids through sweat from his voluntary work conditions combined with insufficient fluid replacement. The driver and employer have admitted under oath that proper hydration is the driver's responsibility and a critically important one because of the severity of harm that can result from fatigue, dizziness and loss of consciousness while driving a 27.5-ton machine at highway speeds. Defendants have not and cannot meet their burden of proof on the lone asserted defense, unavoidable accident. For these reasons, Plaintiffs are entitled to summary judgment.

Respectfully Submitted,


s/ Rodney D. Stewart
Rodney D. Stewart
OBA No. 15105
Attorney for Plaintiff Randy Lundy
STEWART LAW FIRM
801 N.W. 63rd Street, Suite 100
Oklahoma City, Oklahoma 73116
Telephone:  (405) 601-6060
Fax:  (405) 254-5118
E-Mail:  rds@rstewartlaw.com


## **CERTIFICATE OF SERVICE**

I hereby certify that on June 1, 2023, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to those registered participants of the ECF System.


s/ Rodney D. Stewart
Rodney D. Stewart